Hear ye, hear ye, this Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Catherine E. Zienoth presiding along with Justices Anne B. Jorgensen and Liam C. Brennan. The case is number 220-101 MCJ Investments LLC et al. Plaintiffs Appellees and Cross Appellants versus Iconic Energy LLC Defendant Appellant and Cross Appellee. Arguing for the Appellant and Cross Appellee, Theodore Leibovitch. Arguing for the Appellees and Cross Appellants, Carrie Thompson. Thank you very much. Mr. Leibovitch, you may begin your argument. Thank you, Ron. Good morning. I'm the attorney for the Appellant, Iconic Energy LLC. This is a case involving a construction contract for a massive solar energy project for installation of solar energy panels in a field adjacent to apartment buildings in DeKalb, Illinois. After the case went to trial, the judge decided that there was a breach of contract by the Plaintiff Appellee, MCJ, and the trial judge decided that although there was a breach of contract, the issues involved here are, did the, and I'll refer to the Plaintiff Appellee as MCJ, did MCJ terminate the contract? Were the requirements for liquidated damages met? Was there consideration to support the second amendment to the contract? Should damages be awarded under the personal guarantee of Dr. Sean Betty, and should attorney's fees be awarded? The contract provided for liquidated damages in the event of early termination. The court found, the trial court found MCJ in default, but found that MCJ did not terminate the contract once that term is used. Council, on that first issue of termination or abandonment of the contract, back in, I think it was May 9th, 2017, MCJ's counsel wrote a letter saying that in essence, Betty would like to explore the possibility of solar panels and moving ahead with your client once the moratorium from the county had been lifted. And then once the moratorium was lifted, actually, and MCJ went ahead and actually entered into an agreement with another company. Given these facts, how is that evidence of abandonment or termination? Because we're looking at the second amendment to the contract. It is acknowledged by both parties that contract is being terminated and that MCJ wanted to terminate the contract. So there was an express statement that this contract is being terminated. And I want to say that was dated May 7th. In addition to that, there was a breach of the contract by virtue of failure to make the payments according to the terms of the contract. So that breach, I would argue, is also a termination of the contract. When that breach is acknowledged, or not acknowledged, but is argued by Iconic Energy as a breach of the contract leading to termination. That breach gave rise to the liquidated damages because of early termination and the liquidated damages clause provided for a specific amount. That specific amount was $1,037,000. That was stated in the original contract. It was stated in the first amendment and it was stated in the second amendment to the contract. Mr. Leibovich, if I may, thank you. Each time the contract was either drafted or amended, was MCJ ever present with an attorney or was the only person represented by counsel Iconic when those events occurred? Neither party was present with an attorney at the time the contract and amendments were executed. The contract and the amendments were drafted by legal counsel for Iconic, is that correct? It's correct. All right. And obviously, I shouldn't say obviously, but is it fair to say that we construe any ambiguity against the drafter in a circumstance such as that? I believe that is the law in use. All right. Thank you. Counsel, I have another question about the liquidated damages. We've touched on that. In the concluding paragraph of your brief, you say, if the liquidated damages clause is held to be unenforceable, actual damages should be awarded in the full amount of lost profits and you give that as 1.785 million. But if the trial court found that Iconic didn't prove actual damages and that is not challenged on appeal, how and why is Iconic entitled to a judgment in that amount? Well, I guess it's a fallback. We take the position that it was clear liquidated damages were provided in terms of the contract and that's the amount which should be awarded. I don't know if that is responsive to your question or not. So, you're saying you take that and say there was a little bit of interference, I think, when someone on 309 is going on and off here. I don't know who is on with 309, but maybe we can, whoever that is, can mute themselves and stay muted. Okay. I'm sorry. Would you mind repeating what you said? I apologize. There was some background interference. Not at all. What we are arguing is are the liquidated damages are $1,037,000. But pursuant to case law, if the liquidated damages are found not to be properly proven or the liquidated damages clause is somehow not supportable, then because of the breach of contract, to which there is no dispute, we should be entitled to the actual damages, which is the lost profits. That's the $1,785,000. But the court found that actual damages here weren't proven. Well, but the trial court failed to recognize that lost profits are actual damages. The trial court was defining actual damages as, for example, payment to purchase equipment or materials for the job. And those weren't received and payment wasn't received for those. But I think the case law in Illinois is crystal clear that lost profits are an element of damages, actual damages. But you're not appealing the court's finding regarding actual damages, correct? Well, notwithstanding the comment you just made. Well, we are appealing the trial court's ruling on the issue of actual damages because the trial saying, yes, there were actual damages, lost profits. Thank you. I'm sorry. Go ahead. And that's the basis. That's the basis for the liquidated damages. It's just, counsel, so I'm clear here. You're saying if liquidated damages falls, you're entitled to actual damages. And your issue on appeal is that the trial court misconstrued the law as opposed to made any credibility findings as to what was proved to be actual damages. Yes. Yeah. Okay. We're saying it's to know. Okay. So, we also argue that the issue concerning the second amendment to the contract trial court finding that the second amendment was not supported by consideration. First of all, the second amendment was in the settlement agreement between the parts. It was clear that from the terms of the second amendment that the MCJ was agreeing to pay the liquidated damages amount in order to be released. So, it was a settlement and release agreement. And upon payment, MCJ was to be released from any further duty performance or liability under the terms of the contract that's amended. This is clearly an expression of termination as well as supported by the additional consideration of that release. One of the obligations of MCJ under the terms of the contract was to pay attorney's fees. They're being released from the claim at least for attorney's fees um by signing the second amendment to the contract. They're being released from any claim for pre-judgment interest. They're being released from any further duty or performance. So, we're saying there was consideration and the second amendment should be part of the contract. Well, you're saying in essence that that consideration was implicit, correct? Even though not explicit. Yes. Now, is it your contention that Iconic was entitled to attorney fees even before the parties had started any litigation? Yes. Once they breached the contract, Iconic was entitled to attorney's fees according to the terms of the agreement. And there was no mention of pre-judgment interest in the original contract or the first amendment to the contract, right? There was no recital of those items as consideration in either the contract or the amendments. So, how could Iconic have implicitly waived its right to pre-judgment interest when it signed the second amendment? Because it was waiving, in effect, a general release. It was waiving any further duty, performance, or liability which would have included pre-judgment interest or a claim for pre-judgment interest, attorney's fees, etc. Now, there's also like an issue of credibility. The trial court found that testimony from Iconic Energy from Teague Dickey was not credible. But the trial court failed to state why its testimony was not credible. There was no finding at all as to that issue. On the other hand, there was conflicting testimony between Dr. Betty and Mr. Dickey with regard to the review of the contract terms. Mr. Dickey saying that all of the contract terms were reviewed line by line before the contract was signed and that there was a discussion of the liquidated damages clause. His testimony was that Mr. Betty was fine with the liquidated damages contract clause and that he stated and Mr. Betty stated that won't be necessary  Can I interrupt, Mr. Leibovich? In terms of assessing credibility of the two witnesses, the judge presumably put some stock in the fact that Mr. Dickey manipulated that moratorium email which was a little obnoxious from a fact finder standpoint to put it bluntly. And don't we have to defer to the trial judge's credibility findings as it relates to whatever happened in the course of their negotiations and discussions? Your Honor, the additional testimony for Mr. Dickey on that point was that he later called within five to seven minutes later, he called Dr. Betty and he explained to Dr. Betty what the rest of the email said. But in his opinion, this was a matter which was not fully determined by the zoning department. And so he couldn't say one way or the other that this project cannot go forward based upon the zoning department's earlier indications as set forth in the email until he had an opportunity to speak with the zoning officer concerning the issues. So he also followed that up with another email explaining that he was going to talk to the zoning officer and get a ruling, if you will, on how this is going to affect the project. So yes, there was a withholding of certain information based upon Mr. Dickey checking on that information to make sure that how accurate it was and what kind of effect it was going to have with an immediate follow-up with Dr. Betty. So I think given the overall testimony and the circumstances, it wasn't meant to mislead anybody. And in fact, it really didn't have a bearing on what occurred subsequently. That is contrasted against the testimony of Dr. Betty, who testified that I have been contracting with banks and their contractors for the last 30 years. But I didn't read the contract. I didn't read the amendments. I didn't read the second amendment. I just signed it. I question the credibility on that kind of testimony. And secondly, Dr. Betty, it's in the record, was a convicted felon. And he was convicted of jury tampering. Go ahead and finish your statement. Your time is up and you'll have time as the argument progresses here. But go ahead. And he was convicted of jury tampering. So contrasting those, the credibility of the two witnesses, I would say that Mr. Dickey was far more credible witness. And Your Honor, Justice Brennan, you referred to this one incident from T. Dickey, but there was no other point in the trial proceedings where there was any kind of impeachment or question concerning the testimony of Mr. Dickey. All right. At this point, Ms. Thompson. Thank you, Mr. Leibovich. Good morning, Your Honors. Carrie Thompson appearing on behalf of MCJ Investments, LLC and Dr. Sugadar Shanbetti. May it please the court, counsel. I would like to start by first addressing the initial issue that the court found that there was no termination, cancellation, or abandonment. As this court has already touched on, ICONIC was the drafter of this document. Those were the terms that it chose to include in the document. And therefore, this contract will be construed against ICONIC. It certainly had the option to choose different language. Language requiring default or non-payment as a trigger for paragraph 17 of liquidated damages. It did not do so. I also think it's important to note that in its brief, ICONIC does not appear to take issue or present case law that would call into question the court's analysis of these terms and apply their plain and ordinary meaning to the contract. Rather, they seem to make a very broad, general statement that the court aired in its application. Well, if we look at counsel, if we look at the second amendment to this contract, it does say that MCJ and Betty requested termination of the project.  It does, Your Honor. And as pointed... Well, I was going to say, my question is, why can't we consider the second amendment of the contract as an expression of MCJ's intent to terminate it? Well, because as somewhat addressed already here today, ICONIC drafted that document. And I believe Mr. Leibovich in his argument said that counsel was present or involved in these documents. I take very strong issue and offense to that. That document was created at the direction of Mr. Dickey, I believe by Mr. Leibovich, and provided to our client while he was being represented by our office. We did not review it together. We did not approve it. And we would not have approved it. Further, there was some testimony presented to the trial court on this issue, although this issue, of course, was not raised directly at trial. The first time it arose was during the motions to reconsider. Therefore, the court didn't really have an opportunity to make a finding for this honorable court to review. But regardless, the testimony provided by Dr. Betty was that he had discussed a mutual termination with Mr. Dickey. And that is what he expected to be reflected in that agreement. He did sign it without reading it, certainly a hard lesson, one that he will never repeat, I assure you. But once he found out what that document said, he immediately tried to contact Mr. Dickey. He further contacted our office, which prompted us to send the letter, which was admitted into evidence, I believe it was on number 11 on May 9th, asking that that contract be destroyed because our client did not understand what it said, did not intend to terminate this agreement, and, in fact, wanted to continue to pursue options.  GOLDSTEIN. Ms. Thompson, Dr. Betty, would it be fair to say he's a fairly sophisticated investor and businessperson? I mean, he's not a neophyte to contracts or these types of issues, it would appear. And with that in mind, is it unfair to bind him to fairly straightforward terms of the amendment? BETTY THOMPSON. I would agree that he does have a business and real estate experience. And as he noted and explained during the trial, he generally trusts the people he's working with. He operates, to an extent, on a handshake. Certainly, that's ill-advised. But the premise for which the Second Amendment is being offered is evidence of intent. And I think for that purpose, it cannot stand. Our client did not draft this, did not agree to it, and the supporting evidence of his conduct afterwards certainly supports his belief that this contract was supposed to say something completely different than what it did. GOLDSTEIN. And by that, you mean contacting his lawyer immediately, after he apparently fled it? BETTY THOMPSON. Yes, and sending correspondence and further attempts to pursue alternate options to complete this project. And in response to our May 9th letter, we received a letter from Attorney Leibovich on May 30th. I believe that was admitted as Exhibit Number 12, in which they acknowledge that no further attempts, that Iconic is not interested in pursuing any other modifications that they deem this contract to be terminated and demand liquidated damages. And under that evidence, I think there is more evidence to suggest that Iconic terminated this contract and Iconic had the affirmative actions, as explained by the trial court, to constitute termination and not MCJ Investments or Dr. Betty. So if we go back a little bit, though, and look at the first amendment to the contract, didn't MCJ clearly breach the terms of the first amendment to this contract by not paying Iconic in accordance with what was written in that first amendment? And why shouldn't that be construed as abandonment of the project or termination of the project? We do admit that Iconic did not make the payment pursuant to that contract. However, we are at a disadvantage here, as we further raise and on appeal, is that that should not have been allowed as an additional form of recovery. Iconic raised that issue in the midst of trial. Discovery was not conducted with an eye towards investigating the circumstances surrounding the first amendment. Iconic was not given the, or excuse me, MCJ Investments and Dr. Betty were not given the opportunity to explore that through discovery and raise additional defenses, which we would have done. We believe that there could be evidence to support that there was some sort of anticipated breach in that payment was not made that day. The first amendment calls for the initial payment to be made on or before March 9th. The contract was also signed on March 9th. And there was some testimony related to the fact that when the parties came together to sign the agreement, Mr. Dickey was aware that the $20,000 payment was not present. Subsequently, between March 9th and March 21st, when the next payment was to be made, the moratorium ordinance was passed on March 15th, further complicating the future of this project. And the ongoing conduct of these parties shows, I believe, an agreement to amend or an agreed to delay this payment until they knew if it was in fact going to be required or allowed. Thank you. Thank you. Was there a force, was there a force majeure provision in the contract at all? I don't believe so. I don't recall that being a specific provision in the contract. Oh, and just to further expand on my prior arguments, even if the non-payment, as you say, Justice, was a breach, in order to recover under liquidated damages, it needs to not be a breach but fall under one of the three terms that ICONIC chose to use in this case, which is termination, abandonment, or cancellation. And again, as the court analyzed and found each of those phrases requires an affirmative act. And the court found that the non-payment was a non-action and therefore did not trigger recovery under the liquidated damages clause. Well, I appreciated the trial judge's grammar lesson. It was actually interesting. However, can't the non-payment inferentially suggest that somebody is breaching, not going to continue with the obligations under the contract? I don't think that can be fairly construed under these circumstances. At the time that contract was being entered into, there was a lot of movement going on with the county board that was going to impact the future completion or potential completion of this project. The very wording of the moratorium said that no action was going to be taken on any application for permitting. And as Mr. Hyland from the Planning and Zoning Committee testified, he would not have been allowed to process a building permit, a site development permit, a special use permit. And therefore, there were, in effect, if this project had gotten off the ground, a stop work order would have been issued to prevent it from moving forward because no permit was issued. And I guess it also refrains back to my prior argument that if it was intended for non-payment or breach to trigger liquidated damages, then ICONIC should have included that in the contract, but they didn't. Council, on the issue regarding consideration supporting the second amendment to the contract, Mr. Leibovich argued that, in essence, there was consideration. It was implicit consideration supporting this second amendment to the contract, the waiver of its right to attorney's fees and pre-judgment interest. It granted a 30-day extension for MCJ to pay liquidated damages. How do you respond to that argument that there actually was consideration for this second amendment? Your Honor, in reviewing the actual language of the second amendment, it states that ICONIC's consideration is going to be termination of any further efforts to complete the contract. This is not consideration because under the initial contract, ICONIC was not required or $3.5 million. So they would be effectively terminating efforts that they were not required to undertake. So that is not consideration. The consideration of the waiver of attorney's fees and pre-judgment interest, I believe Your Honor has touched on the difficulty with that argument. At the time the second amendment was signed, there was no litigation pending between the parties. There was effectively nothing related to attorney's fees or pre-judgment interest to be waived because there was no reason to believe they would be able to recover attorney's fees or pre-judgment interest. It also is important to note that under the prevailing party paragraph of the original contract, the parties were only entitled to attorney's fees if they prevailed through a pre-judgment interest. That is true as well as the pre-judgment interest. That is not mentioned anywhere. It is not expressly waived as referred to in the contract. It is not a fair inference to make that those would have been waived. Ms. Thompson, in olden days we would say for consideration of $1 or $10 and we would put that in every contract so we would never have a consideration issue. But modern contract drafting does not do that. A lot of times it does not even spell out what the consideration is. It just says where is the effective for good consideration provided and leaves it at that. And I raise this only because the concessions, if you will, that you have just gone through that Mr. Leibovich mentioned to us, under modern interpretations of what constitutes consideration, it seems to not require much and that seems to be something. And I guess I would point the court to, of course, as you are aware, this would be a consideration to support the contract. The very language then of the contract is the limiting factor here. And the language of this contract states that Iconic Energy's consideration is going to be termination of future efforts and MCJ Investments and Dr. Betty's consideration is going to be the payment of liquidated damages. Again, those provisions are already provided for in the original contract. As Judge Waller noted, the Second Amendment offers nothing new, no new burdens, no new debts, no new obligations, absolutely nothing. So while I understand certainly the court's argument or the court's position on that, I think we are limited to the very terms of this document, which clearly recite what they believe to be the consideration offered. And in fact, that consideration is insufficient to support the Second Amendment. Is there any such thing as, quote unquote, implicit consideration? Or do we just look to the four quarters of the contract? I think in this case, we look to just the four quarters of the contract. And that's what Judge Waller did in this case. And that approach has not been contested on appeal by Iconic. I wanted to touch briefly, if I may, that even assuming arguendo that there was some sort of termination by MCJ Investments and Dr. Betty, the liquidated damages clause in this case is certainly not enforceable. There was no intent to include liquidated damages. The calculation was not reasonable and not proved up by Iconic. And certainly, the court found that there would be no difficulty whatsoever in ascertaining damages at the time of breach. Mr. Leibovich made some comments about credibility in his statements. I think there was significant proof in the testimony that was presented. And Justice Brennan, you certainly picked up on that to support the court's finding that Mr. Dickey was not credible. And that being his total manipulation of that email sent on April 3rd, which completely changed the tone of the email. And most egregiously, in that email, Mr. Dickey offered to forward that email to Gary Dudzik, who was the finance officer who was going to ultimately issue the $3.5 million to Iconic. So he was willing to make that misrepresentation and carry it on to other parties involved in this matter, I believe, to procure that $3.5 million. As it relates to common law damages that was also briefly touched on here, that relief was not requested in the original complaint. It's not requested in the amended complaint, adding the additional account for breach of contract. There should be deemed waived and forfeited. And as I believe was already mentioned by the justices here, there was no underlying calculation to prove up what those damages were. All we have to that effect was Exhibit 37, which was admitted only for demonstrative purposes, not substantive. You can tell from the face of that document is self-serving. The first page appears to be a word document with just a listing of products and costs. And what's attached to Exhibit 37 is an invoice that's in fact dated March 17th of 2017, which would have been after the original contract was signed, after the First Amendment was signed, and after the moratorium was in place on March 15th. So why we have an invoice that was created after all of these events is unclear. Let me focus for just a minute on the issue of attorney's fees. How were MCJ and Betty prevailing parties given that they were unsuccessful in their complaint for a declaratory judgment? As cited in our brief, Your Honor, the case law suggests that there should be almost a totality view of the issues and the significance of those issues raised in the court. The benefits to the parties in bringing the action and whether judgments were ultimately entered in their favor. By looking at all the significant issues before the court, MCJ and Dr. Betty prevailed on all of them. The lack of consideration for the Second Amendment, the unenforceability of the liquidated damages clause, and the significant benefits of which was not having to pay the $1 million or so in liquidated damages. And as in reverse, also was not the prevailing party and that the only thing they arguably succeeded on was the last minute addition of claim for breach of contract of the First Amendment. I believe I'm running very close on time. Just to briefly touch on the court's decision to grant ICONIC's amended motion to amend again, this is a pretty straightforward issue. There are four factors for a court to generally consider when determining whether to grant such a request. One would be... Instead of going into the factors, let me ask maybe a more summary question. How was MCJ prejudiced by the court's decision to allow ICONIC to amend the counter-complaint given the fact that it did not award, that the court didn't award damages to ICONIC? I certainly will acknowledge that in the event that this court should affirm the trial court's finding of no award of damages related to the First Amendment, I think that would make our claim here moot. However, given the issues raised on appeal by ICONIC, there is at least a possibility that we could be perhaps returned back to the court for further assessment. The only issue they prevailed on was the breach of the First Amendment. If that is going to survive, we wanted to raise the issue of how we were in fact prejudiced by raising this claim so late in the proceedings. In effect, as you can see from the trial transcript, this request was granted moments before Judge Waller rendered his ruling on all proceedings before the court and effectively denying our request for a 21-day continuance to conduct further discovery, investigate additional defenses, to prepare to meet the allegation that he breached the First Amendment, which I of course feel confident that we could have prevailed on that your time is up. You will have another brief opportunity to respond to Mr. Leibovitch during the course of the meeting. So Mr. Leibovitch, it's your turn at this point. You're on mute. You have to unmute yourself. I apologize. There are a few points that I would like to address. First of all, Mr. Betty stated in his testimony that he had to cancel the contract because the bank told him he had to cancel. And then Dr. Betty testified he didn't intend to cancel or abandon the project. Well, if he wanted to cancel because the bank told him to and then he didn't want to cancel, which is it? I mean, this is another point of his lack of credibility. Secondly, there was testimony that there was a tremendous amount of work in preparation that went into this project. The testimony from Mr. Dickey was there were 64 trips between Rockford and DeKalb. The time which was devoted to this project took time away from other projects and there was lost income due to these efforts, which he estimated up to 40% of revenues. There were six or seven financial proposals. There were feasibility forecasts. There were design. There was incentives which had to be investigated and there were system layouts. So, it's not as if this is used in the brief prepared by MCJ. It was not a windfall. There was a lot of time put into it. And also, I'd like to point out that MCJ, as the court alluded to earlier, later contracted with Green Circuit to complete this project and the testimony was that or the evidence was that Dr. Betty received a proposal from Green Circuit while he was still under contract with Iconic. And later on, he contracts with Green Circuit and completes the project after breaching the contract with Iconic. The quote from the email, which is in evidence in part of our brief, from the Green Circuit principal was, if you commit to us in a binding contract that if the project moves forward, you will use Green Circuit. We will do and list out the things that they're going to do for Betty. 30 days later, Betty and MCJ terminates the contract with Iconic. Now, the three elements necessary to prove liquidated damages are intent to agree and settlement of new damage, amount of liquidated damages being reasonable and the uncertainty of the amount of the damages. Briefly, we would restate the argument that the intent to agree was testified to by Mr. Dickey, that they went over that particular point in all points, line by line on the contract. And I stated earlier what the comment was from Dr. Betty, that it was fine, he wasn't going to breach. That the amount of liquidated damages is reasonable, liquidated damages being $1,037,000 is far less than the $1,750,000, which was the testimony from Mr. Dickey as to what the lost profits were on the job. And then the uncertainty of the amount of damages, Mr. Dickey gave lengthy testimony on the fact that you can't predict what the materials are going to be at any particular point because the materials on a material market, which goes up and down, at the time we had tariffs, which had to be considered. The availability of the materials, the cost of excavation, once you get into it, because you might find things in excavation that you can anticipate. And so that's when they fixed the $1,037,000, which was far less than the actual loss of profits. And Judge Waller made an issue out of the fact there's no nexus between the figure which was estimated to be $1,037,000 and the lost profits, because it's only 55% of the lost profits. Well, the case law that I cited shows that it doesn't matter if it's less, the only issue is, is it excessive and is it a constitutive penalty? Not if it's less. The other points, there's nothing in the record to show that Mr. Dickey was represented by counsel at the time the agreement was in. These agreements were in the contract, the First Amendment, the Second Amendment. There's a statement that he was represented by Attorney Thompson's office, but at what point, we don't know the record as a state and whether or not that was made known to either Iconic or to myself as counsel for Iconic. A signer of a contract is presumed to know the contents of the agreement and that there is a high burden of proof to overcome that. The NCJ filed an affirmative defense of fraud that was denied. So the fact that Dr. Betty, who is sophisticated, has contracted for 30 years and so on and so forth, it's just not believable that he didn't know what was in the contents of the agreement and just signed it without reading. Counsel, just moving on, Mr. Leibovich, to a couple other points I want to ask you about. One is with respect to attorney fees. Can you let us know how Iconic was the prevailing party, given that Iconic was not awarded any damages in this case? Well, first of all, we would argue that it should have been awarded damages. And secondly, prevailing party, because the trial court found that there was a breach of contract and Iconic's complaint was for a breach of contract. So we were notorious on that issue. And with breach of contract, there should be damages. I just, I don't know how you can have a breach of contract and no damages. Um, when there are lost profits. Counsel, can there be more than one prevailing party? Well, in the sense that if the court finds in favor of a party on a particular issue, I suppose there could be. Um, but you have to take a look at the overall allegations of the complaint, what the causes of action were and what the decision was with regard to those causes of action and determining who actually prevailed. But I would say that would be in the sound discretion of the trial court to make that determination. Unless you find fault that the trial court didn't find either side to be prevailing or that he didn't find you to be prevailing. Oh, well, we find fault in the fact that trial court didn't award us damages. And, and I would say that because we prevailed on the issue of breach of contract, that, that should be determinative. Would you also agree that, um, the opposing side also prevailed on certain claims or counts and that they too would be the prevailing party or a prevailing party? Excuse me. Um, no, I don't agree with that. And the reason I don't agree is because the, the main issue in the case is, was there a breach of contract? Their declaratory judgment was, uh, to seek, uh, the court's ruling as to whether or not there was a breach of contract.  Um, And do you want to comment finally on counsel's argument regarding the late motion to, um, add the first amendment to the case? Yes. Um, it, it, uh, in no way could be considered to have taken them as surprised as set forth in the written argument. Um, when the complaint was filed, the first amendment was attached to the complaint. It was alleged in the complaint. Um, the first amendment, um, was a matter which was explored on discovery. The first amendment, the contract becomes the contract as amended. So when we're talking about a breach of contract, we're talking about a breach of the amended contract. Um, they had the opportunity to ask questions with regard to the, uh, first amendment to the contract. Um, to say that the first amendment to the contract, uh, was something that, that they weren't aware of, or didn't have the opportunity to explore, um, or didn't have, uh, discovery on is, is just, it was not the case. So, um, the judge, I think made a proper decision. Right. Um, your time is up. Is there anything, I know I could show up with a question, anything final, uh, in terms of a final sentence or so? Yeah, I just wanted to, to state that ICONIC certainly believed it was going to be able to recover attorneys fees at the time of the signing of the second agreement, because there was acknowledgement that there was a breach of the contract that, uh, um, MCJ wanted out of the contract. So they had to anticipate that attorney's fees, uh, were something that could be sought when they agreed to the liquidated damages. Okay. Thank you very much. All right. Ms. Thompson, you have five minutes. Uh, thank you, your honor. Uh, first to address the statement, uh, made by Mr. Leibovich related to, uh, our client's request to cancel the contract, uh, because his banker, uh, Mr. Dudzik, uh, required him to, uh, there was additional questioning and follow-up by myself during trial, uh, to, uh, clarify that perhaps Mr. Dickey misunderstood, uh, what he, what Mr. Betty or Dr. Betty had said, and that his banker had, uh, advised him essentially not to continue with this project. Uh, Mr. Dudzik's, uh, testimony, uh, revealed, or he referred to what I believe were several red flags about how this project was being conducted. Uh, uh, one of which was the, uh, payment of $3.5 million for which he referred to, uh, as a problem because there was no product on site. Uh, as an experienced lender in construction contracts, he found that to be very unusual, uh, and he raised that as a red flag. Uh, in addition, the check that was to be issued was to be issued jointly to Iconic Energy and to, I believe it was French Girlman. Uh, uh, Gary Dudzik again found that to be a red flag. So there was certainly some conversations happening in the background by which Dr. Betty, uh, was advised that this, uh, contract was suspicious and perhaps shouldn't continue with it. But, uh, for Mr. Dickey to state that our client, uh, told him that that was the reason he was terminating, again, I think is, is incorrect and again calls into the, the credibility of, of Mr. Dickey and that somewhat self-serving statement. Um, next, uh, Mr. Leibovich, uh, describes, uh, the, the tremendous amount of work I believe he referred to, um, to prepare. Um, while he didn't say, I, I believe what he's prior to contracting, uh, and as such, that's not something that can be recovered prior to contract. Um, there were, there was mention of other losses, other projects. Uh, again, none of that was proved up at trial. Um, at some point in the proceedings, I believe I actually engaged Mr. Dickey with questions about what projects did you, did you forego? Did you forego any projects because you're, uh, because of your work with, uh, MCJ investments? And his answer was no, there were no other projects that he had to turn down, walk away from because of his dedication to this project. Again, not proved up, uh, but, uh, and it's not a reason to, I'm assuming Mr. Leibovich is attempting to recover some damages. Again, I'm not sure why this comment's being made now. Um, he also mentioned five to seven financial proposals, design incentives, system layouts. We have no proof, no evidence in the record or otherwise that any of those things existed. And we persistently asked for those things to be produced and they were not. Um, he mentions the email from, uh, Green Circuit and Brett Robinson. Uh, if the court looks at the bias, that was it. Um, Mr. Leibovich appears to be presenting it today for some alternate reason. Uh, he also mentions the liquidated damages clause. Um, again, there was no intent to include or negotiate liquid, liquidated damages ahead of time. The court made that credibility finding. The reasonableness of the damage, uh, damages, uh, somewhat ignores the court's core analysis of that, uh, prong, uh, because ICONIC did not produce those core damages, those costs for materials, labor permitting, there was no basis for which the court could then analyze lost profits, reasonability in the event of breach, whether that 25%, as they requested, um, was again, a reasonable forecast of harm because we didn't have a foundation or the court didn't have a foundation. It couldn't go on to properly analyze the reasonableness of that term. Um, and again, as it relates, uh, to his comments about how we were not surprised by the additional account for breach of contract, even today, we still have no reason as to why ICONIC waited as long as they did to bring that, uh, uh, forth or that request before the court. Uh, the case law cited, uh, by MCJ and Dr. Betty, uh, point to the fact that these requests should only be granted in the midst of trial if there is good cause shown or some reasonable, uh, uh, basis to wait as long as they did to bring this cause of action. The cause of action alleged completely separate conduct for breach of contract, um, at a different point in time and involved an entirely separate contract itself. Uh, for all those, uh, reasons, uh, it did take us by surprise and it deprived us an opportunity, uh, to fully, uh, prepare to respond to those allegations and we were prejudiced. Um, also, uh, I wanted to touch on, it wasn't brought up here. Um, or I think perhaps, uh, Mr. Leibovich mentioned the, the, the personal guarantee, um, which was not, uh, properly proved up. I'm sorry, your honor. Your time is up. If you want to just, uh, shorten your last, uh, statement then please and close. Oh, I I'm sorry, judge. All I was going to say was that, um, the language of the personal, uh, or the contract, uh, said that the personal guarantee was to, uh, guarantee the installment note. That note of course was never entered into evidence. Therefore, there was no debt for which Dr. Betty could guarantee. Uh, and therefore they failed to prove the elements of a personal guarantee. Uh, we ask that the court's findings as laid out in our brief, um, be affirmed and, uh, reversed on the issue of attorney's fees and the granting of the amended motion to amend. Thank you. Thank you counsel for your arguments today. The court will take the matter under advisement and render a decision in due course. The proceedings in this case are now closed and I'd ask, uh, the clerk, Mr. Kaplan to terminate the recording. Thank you again, counsel.